# RECORD NO. 13-1727

### In The

# United States Court Of Appeals

## For The Fourth Circuit

**JEFFREY C. SKEENS, as Administrator of the Estate of Grover Skeens;
CAROLYN D. DAVIS, as Administratrix of the Estate of Charles T. Davis;
OWEN T. DAVIS, as Administrator of the Estate of Cory Davis,**

*Plaintiffs - Appellants,*

and

**GROVER SKEENS; CHARLES T. DAVIS; CORY DAVIS,**

*Plaintiffs,*

v.

**ALPHA NATURAL RESOURCES, INCORPORATED; ALPHA
APPALACHIA HOLDINGS, INCORPORATED,**
**f/k/a Massey Energy Company,**

*Defendants - Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

_____

### BRIEF OF APPELLANTS
_____

**J. Michael Ranson**
**RANSON LAW OFFICES**
**1562 Kanawha Boulevard, East**
**P. O. Box 3589**
**Charleston, WV 25336**
**(304) 345-1990**

**G. Patrick Jacobs**
**JACOBS LAW OFFICE**
**7020 MacCorkle Avenue, SE**
**Charleston, WV 25304**
**(304) 926-6676**

*Counsel for Appellants*

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
        (appellant/appellee/amicus)


1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO


2.      Does party/amicus have any parent corporations?                               YES     NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                           YES     NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES    NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    YES    NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                YES    NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____        _____
        (signature)                                    (date)

07/19/2012
SCC

- 2 -

# **TABLE OF CONTENTS**

**PAGE:**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF SUBJECT MATTER AND
   APPELLATE JURISDICTION ...............................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE...................................................................1

STATEMENT OF THE FACTS .................................................................2

SUMMARY OF THE ARGUMENT ..........................................................5

ARGUMENT ..............................................................................................5

      STANDARD OF REVIEW ..............................................................5

      DISCUSSION ...................................................................................6

CONCLUSION .........................................................................................15

REQUEST FOR ARGUMENT ................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

**<u>PAGE(S)</u>:**

**<u>CASES</u>:**

**<u>Does v. United States</u>**,
    817 F. Supp. 2d 1447 (S.D. Fla., 2011).......................................10, 11, 13, 14

**<u>In re W.R. Huff Asset Management Co.</u>**,
    409 F.3d 555 (Fed. 2nd Cir. 2005) ................................................................12

**<u>Kenna v. U.S. Dist. Court for C.D. Cal.</u>**,
    435 F.3d 1011 (9th Cir. 2006) .........................................................................6

**<u>Mylan Labs., Inc. v. Matkari</u>**,
    7 F.3d 1130 (4th Cir. 1993) ............................................................................5

**<u>United States v. McVeigh</u>**,
    106 F.3d 325 (10th Cir. 1997) .........................................................................6

**<u>STATUTES</u>:**

18 U.S.C. § 3771 .........................................................................................*passim*

18 U.S.C. § 3771(a) ...........................................................................................6

18 U.S.C. § 3771(a)(6).......................................................................................1

18 U.S.C. § 3771(d)(1)........................................................................................6

18 U.S.C. § 3771(d)(3)........................................................................................7

**<u>RULE</u>:**

Fed. R. Civ. P. 12(b)(6)......................................................................................5

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The underlying cause of action was brought in the Southern District of West Virginia pursuant to a Federal Question under 18 U.S.C. § 3771 Crime Victims' Rights Act. The Appellate Jurisdiction is based upon the fact that the District Court dismissed the plaintiffs' cause of action citing that the Court did not have Jurisdiction pursuant to 18 U.S.C. § 3771 (J.A. VI at 31).

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in dismissing the plaintiffs' cause of action pursuant to 18 U.S.C. § 3771 Crime Victims' Rights in which they allege the right to be "treated with fairness and with respect" pre-indictment and before their rights are extinguished pre-indictment (J.A. VI at 31).

2.    Whether the District Court erred in dismissing the plaintiffs' cause of action requesting that the Court pursuant to 18 U.S.C. § 3771(a)(6) review voluntary restitution to insure that it is paid in full and in a timely fashion pursuant to a  non-prosecution agreement.

## STATEMENT OF THE CASE

The Plaintiffs respectfully seek an order from this Honorable Court (J.A. VI at 43), pursuant to 18 U.S.C. § 3771 Crime Victims' Rights Act, directing the Honorable Irene Berger of the Southern District of West Virginia to protect the

1

plaintiffs' rights, under a Non-Prosecution Agreement (J.A. VII at 151) as required by the Crime Victims' Rights Act set forth in 18 U.S.C. § 3771.

## STATEMENT OF THE FACTS

The plaintiffs and the families they represent are victims of federal crimes committed by the agents of Massey Energy Company (hereinafter Massey) and Alpha Natural Resources (hereinafter Alpha).[1]  Their loved ones died in one of the worst mining tragedies in the history of the United States.

At some point in time, the United States Attorney's Office for the Southern District of West Virginia entered into discussions with Alpha to consummate an Agreement that would forever absolve Alpha Natural Resources, Inc. of any future criminal responsibility as it related to the deaths and injuries at Upper Big Branch. The "agreement" became known as the *Non-Prosecution Agreement* (J.A. VII at 151).

Despite the fact that the plaintiffs herein were clearly victims they were not notified or made a part of this agreement and only learned of the *agreement* as part

---

[1] Several months prior to the execution of the Non-Prosecution Agreement, the Plaintiffs settled Wrongful death claims with *Massey Energy Company*. These settlements were limited to the Wrongful Death cases and **did not include** criminal restitution of any sort or kind. In addition, at the time of the referenced wrongful death settlements, Alpha Natural Resources, Inc. had not purchased Massey Energy Company and therefore was in no way a part of those previously settled wrongful death claims.

2

of a public announcement made by the United States Attorney's Office for the Southern District of West Virginia (J.A. VII at 150).

While the plaintiffs and the other estates were not named parties to the Non-Prosecution Agreement (J.A. VII at 151) it is clear from the reading of the agreement that Alpha Natural Resources, Inc. was to pay consideration to all the victims "families" in exchange for the United States Government entering into this agreement. Since the Plaintiffs had no input into the agreement, it is uncontroverted that the language of the agreement was drafted by Alpha Natural Resources, Inc.

As it relates to the Appellants/Plaintiffs the agreement states the following:

- Alpha agrees to pay, or to cause Massey or its affiliates to pay, at least $1,500,000.00 to each of the families of the fallen miners and to two individuals affected by the UBB explosion.

- The total restitution payment shall be $46,500,000.00 of which (a) $16,500,000.00 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C (J.A. VI at 30);

- and (b) $30,000,000.00 will be paid to the families of the fallen miners and two individuals affected by the UBB explosion in the actions in Appendix D who have not resolved their claims, consisting of payment to each of (i) $500,000 to be paid within 15 days of the execution of this Agreement, and (ii) $1,000,000 which will be payable at the time of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent the civil resolution results in a monetary recovery. Alpha will make the payment described in subparagraph (b) above into a fund established to pay those families of the fallen miners and the individuals.

3

The agreement clearly states that each of families of the fallen miners will receive $1,500,000.00 in *Restitution* as part of the Non-Prosecution Agreement (J.A. VII at 151). The agreement states that payment is to be made based on how a family fits into one of three categories:

1.    Those that have settled their claims and have previously been paid $1,500,000.00 in additional restitution as part of said settlement;

2.    Those that have settled their claims and it is anticipated that $1,500,000.00 will be paid as part of that settlement;

3.    Those that have not settled their claims. As it relates to those families they are to receive $500,000.00 in restitution within 15 days of the agreement and the remaining $1,000,000.00 in excess of any settlement at the conclusion of their civil action.

The Appellants/Plaintiffs clearly fall into **Category 2** in that their estates settled their wrongful death cases, however, as part of that settlement they had not been paid $1,500,000.00 in restitution.

Within 15 days, Alpha began to pay $500,000.00 to Category 3 families of fallen miners for which the estates had not settled their claims. Importantly, those monies were not paid pursuant to the West Virginia wrongful death statute. Thereafter and within 6 weeks of signing the Non-Prosecution Agreement, Alpha resolved all of the remaining wrongful death cases and it is believed paid those families the remaining $1,000,000.00 in restitution.[2]

---

[2]  Currently that information is under seal and not fully known to the Appellants/Plaintiffs.

4

However, since the signing of the Non-Prosecution Agreement the plaintiffs and most, if not all of the Fallen Eleven, have not received the $1,500,000.00 "anticipated" to be paid to the families of the fallen miners as consideration for the Non-Prosecution Agreement.

## SUMMARY OF THE ARGUMENT

Pursuant to 18 U.S.C. § 3771 the District Court clearly has the authority to review the Non-Prosecution Agreement to see that its terms are complied with and that these Appellants/Plaintiffs have been provided a right to confer, to be treated with fairness, and to be given accurate and timely notice of court proceedings

## ARGUMENT

### STANDARD OF REVIEW

This is an appeal from a motion to dismiss order. The standard of review of a motion to dismiss based upon Federal Rule 12(b)(6) order and a question of subject matter jurisdiction is de novo. The court is required to accept all allegations of the complaint as true and construes the facts in the light most favorable to the plaintiff. **See Mylan Labs., Inc. v. Matkari**, 7 F.3d 1130, 1134 (4th Cir. 1993).

# DISCUSSION

Pursuant to 18 U.S.C. § 3771(a) Crime Victims' Rights Act[3], the District Court is charged with the responsibility of assuring that victims of a crime have, among other rights, the following;

(5)    The reasonable right to confer with the attorney for the Government in the case.

(6)    The right to full and timely restitution as provided in law.

(8)    The right to be treated with fairness and with respect for the victim's dignity and privacy

While the District Court acknowledged the Court's responsibility as it relates to 18 U.S.C. § 3771 in granting the Appellees' motion to dismiss, the District Court found that it had **no jurisdiction** because 18 U.S.C. § 3771 did not apply to the terms and conditions of Non-Prosecution Agreements. However, this finding is clearly contrary to well established law and the statute which states as follows:

---

[3] The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard. The Crime Victims' Rights Act sought to change this by making victims independent participants in the criminal justice process. **See** Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act, Pub. L. No. 108-405, §§ 101-104, 118 Stat. 2260, 2261-65 (2004) (codified at 18 U.S.C. § 3771). The CVRA guarantees crime victims eight different rights, and unlike the prior crime victims' rights statute, allows both the government and the victims to enforce them. **See** 18 U.S.C. §§ 3771(a), (d)(1); **United States v. McVeigh**, 106 F.3d 325, 335 (10th Cir. 1997) (per curiam). **Kenna v. U.S. Dist. Court for C.D. Cal.**, 435 F.3d 1011 (9th Cir. 2006)

The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime **or, if no prosecution is underway**, in the district court in the district in which the crime occurred. 18 U.S.C. § 3771(d)(3) (**emphasis added**).

Furthermore, the statute also clearly states that "the district court **shall** take up and decide any motion asserting a victim's right forthwith" (**emphasis added**). The fact that the victims are affected by a Non-Prosecution Agreement does not change the applicability of 18 U.S.C. § 3771 Crime Victims' Rights Act.

It is not disputed that all of the families of the decedents suffered similar injuries and/or death as a result of the criminal acts at Upper Big Branch. Despite these similarities, eighteen families settled wrongful death cases with Alpha and Massey and received $1,500,000.00 in restitution, while eleven families settled wrongful death cases with only Massey and did not receive any restitution.

These victims of what has become known as "the Fallen Eleven" have the unfettered right, pursuant to 18 U.S.C. § 3771, to be treated fairly. The District Court is duty bound by Congress to assure fair treatment of these Fallen Eleven. Presently, and without being consulted and/or receiving fair treatment, the rights of *the Fallen Eleven* to have those responsible for the death of their loved ones criminally punished has been forever compromised -- without any consideration and/or input by those families.

It is undisputed that families of the other Fallen eighteen miners were paid $500,000.00 within in 15 days of the Non-Prosecution Agreement being signed. This payment was simple restitution. This payment was neither wrongful death settlement monies nor was this payment distributed pursuant the West Virginia Wrongful Death Statute (J.A. VII at 151).

The agreement, as it relates to the Fallen Eleven, also clearly states that the final payment of $1,000,000.00 will be paid outside of any settlement or verdict at that time said settlement or verdict is obtained. Specifically, the agreement states:

> $1,000,000.00 which will be payable at the time of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent the civil resolution results in a monetary recovery (J.A. VII at 151)

A simple reading of this language states that whether the settlements of a wrongful death claim of one of the fallen eleven was for $10,000,000.00 or if the judgment was $0.00 (via summary judgment or a jury verdict) Alpha would pay $1,000,000.00 in addition to said final judgment.

If Alpha Natural Resources, Inc. did not intend to pay additional consideration to the Fallen Eleven in order to obtain the Non-Prosecution Agreement (*other than what had been previously paid in wrongful death settlements*) then the agreement would have said the following;

8

- Alpha shall pay no restitution to the fallen eleven. The monies previously paid for the settlement of those wrongful death claims and for the beneficiaries named under the West Virginia Wrongful death statue is all of monies that will be paid for the fallen eleven.[4]

Clearly, the agreement <u>does not include</u> this provision for three obvious reasons:

1.  All settlements regarding the Upper Big Branch tragedy, including those of the Fallen Eleven, are under seal. It would be a violation of other Court's Orders for Alpha to provide any information to the United States Attorney in order to, in a public manner, "buy" its way out of future prosecution or to publically announce the amount in a public Non-Prosecution Agreement.

2.  Since the agreement clearly pays the remaining 18 Fallen miners families $1,500,000.00 above any settlement that they might receive such language would immediately demonstrate unfair treatment of the two groups of dead victims.

---

[4] The West Virginia Wrongful death statute does not limit payments to a family member. The Wrongful Death Statute states as follows: **any persons** who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution. On the other hand a payment to "a family" would, at least, follow the laws of descent and distribution or a person's legal will. Another example would be a decease miner whose only living family consisted of grandchildren but at the time of his death had a live-in companion who was dependent on said miner. Grandchildren are not named in the West Virginia Wrongful Death Statute. A payment pursuant to the West Virginia Wrongful death statute may go in total to the live-in companion while a payment to "the family" would go to the Grandchildren.

9

3.  Politically, it would not be pleasing to the public for Alpha to be given credit in exchange for a Non-Prosecution Agreement by using monies previously paid to settle wrongful death claims of fallen miners. In essence, the Fallen Eleven miners were paying consideration for Alpha to obtain the Non-Prosecution Agreement when Alpha was not a party to the wrongful death settlements nor did the trial courts recognize and/or approve any "restitution payment" to the Fallen Eleven miner's families.[5]

Clearly, all of these matters need to be reviewed by the District Court in order to determine if the agreement is fair, whether the Fallen Eleven received fair treatment and if the agreement has been complied with in its entirety.

In the present case, the District Court dismissed the plaintiffs' cause of action agreeing with the position of Alpha Natural Resources, Inc. (J.A. VI at 31) that because it was not indicted or found guilty of any crime that the Criminal Victims' Rights Act does not apply absent prosecution. Alpha Natural Resources, Inc. successfully argued to the District Court that it did not have the power to make Alpha comply with the terms of the non-prosecution agreement.

The finding by the District Court does not follow the clear language of the act itself which states that victim's representative can file for relief even if "**no prosecution is underway**". In __Does v. United States__, 817 F. Supp. 2d 1337 (S.D.

---

[5] Since the Fallen Eleven received payment for settlements of wrongful death several months prior to the entry of the Non-Prosecution Agreement there was absolutely no reason to agree to an extinguishment of their rights as crime victims without any consideration -- particularly since restitution consideration was being given to the families of the Fallen Eleven.

Fla., 2011), as in the present case, the plaintiffs complained that they were not consulted before the government entered into a Non-Prosecution Agreement. In **Does**, the plaintiff argued, that as a matter of law, the CVRA's protections attach before a formal charge is filed against the criminal defendant. Accordingly, Plaintiffs contended that the CVRA applied and that the U.S. Attorney's Office violated their CVRA rights; namely, their rights to confer, to be treated with fairness, and to accurate and timely notice of court proceedings.

In **Does** the Court addressed the threshold issue whether the CVRA attaches before the government brings formal charges against the defendant The Court held that ***it does*** because the statutory language clearly contemplates **pre-charge proceedings**. For instance, Subsections (a)(2) and (a)(3) provide rights that attach to "any public court proceeding ... involving the crime." Similarly, subsection (b) requires courts to insure CVRA rights in "any court proceeding involving an offense against a crime victim." Court proceedings involving the crime are not limited to post-complaint or post-indictment proceedings, but can also include initial appearances and bond hearings, both of which can take place before a formal charge. The **Does** Court found that the CVRA <u>can apply before</u> formal charges are filed and in **Does** the Court ordered complete discovery.

11

Another clear example applying the CVRA <u>before formal charges</u> are filed can be found in **In re W.R. Huff Asset Management Co.**, 409 F.3d 555 (Fed. 2nd Cir. 2005) where the Court found and recognized the right to bring the cause of action but eventually holding that the CVRA was not violated.

In the underlying case, it is clear that the Appellant/Plaintiffs rights under the CVRA were violated in at least one of two ways. First and foremost is Alpha Natural Resources, Inc. admitted refusal to pay the criminal restitution as set forth in the Non Prosecution Agreement (J.A. VII at 151).  The District Court held that since Alpha Natural Resources, Inc. did not plead guilty to a crime, it could not oversee the timely and full payment of Restitution (J.A. VI at 31). The Plaintiffs agree that if Alpha Natural Resources, Inc. did not agree to pay restitution the District Court, absent a criminal conviction, could not order restitution. However, in this case, Alpha Natural Resources, Inc. agreed to voluntarily pay restitution in order to avoid criminal prosecution. The amount of restitution and the payment was agreed upon by Alpha Natural Resources, Inc. and much public ado was made of the fact that Alpha agreed to pay the families of each of the fallen victims the amount of $1,500,000.00.  However, Alpha now proudly boasts that it has not paid the $1,500,000.00 to at least eleven of those families and that they have no intentions of doing so.

It is Alpha Natural Resources, Inc. contention that no judicial body can insure that the true victims of this tragedy get the restitution, even in light of Alpha Natural Resources, Inc. agreement to do so. The Plaintiffs disagree. Although, the District Court could not order restitution pre-conviction it certainly can, pursuant to the CVRA, and even if **no prosecution is underway** review the terms of any non-prosecution agreement to insure that voluntary payments are full and timely as promised. In this case, the plaintiffs do not take issue with the amount of restitution Alpha Natural Resources, Inc. agreed to pay to escape criminal prosecution but are extremely distressed by the fact that their CVRA rights were violated; namely, their rights to confer, to be treated with fairness, and to receive accurate and timely notice of court proceedings.

The second claim of the plaintiffs is they were not treated with fairness and with respect.  Their claim relates to the dismissal of their rights to criminal prosecution without consideration or input. By its mere existence, the Non Prosecution Agreement is not fair. Alpha Natural Resources, Inc. admitted it did not pay any consideration to these eleven families in order to escape criminal prosecution.  Consequently, these plaintiffs, as did the plaintiffs in **Does**, seek to have the non-prosecution agreement set aside.

The District Court also dismissed this request under the CVRA even though in *Footnote 7*, the Court recognized that these plaintiffs clearly had rights pre-indictment.

> *Footnote 7* states as follows (J.A. VI at 39):
>
> For example, the right to be "reasonably protected from the accused" and the right to be "treated with fairness and with respect" may apply pre-indictment. **<u>Does v. United States</u>**, 817 F. Supp. 2d 1447 (S.D. Fla., 2011) ("The government's obligation to give victims notice of their rights under subsection (a) can apply before any charging instrument is filed, depending on which subsection (a) right is at issue and the circumstances involved.") (J.A. VI at 39)

One of the major areas for which these plaintiffs sought review by the District Court was based on the fact that they were not treated with fairness and respect as part of Alpha Natural Resources, Inc. obtaining relief under the Non-Prosecution Agreement. The rights of the fallen eleven were extinguished without any advance notice or consultation. No explanation has been given as to why the Fallen Eighteen (18) were given payments of $1,500,000.00 in restitution and the Fallen Eleven received no restitution. Clearly, the role of the Court under the CVRA is to make an inquiry and review a non-prosecution agreement to make sure that all victims are treated fairly and with respect. Since the District Court found that it is, in fact, required to make such a review it is difficult to understand why the District Court refused to do so and instead dismissed the Plaintiffs' cause of action.

## CONCLUSION

The Appellants/Plaintiffs respectfully request that this Court reverse the District Court's Order dismissing their claim under the 18 U.S.C. § 3771 Crime Victims' Rights Act and remand this action back to the District Court directing the District Court to address and decide the Plaintiffs' motion asserting their victims' rights forthwith.

## REQUEST FOR ARGUMENT

Appellants request oral argument.

Respectfully submitted,

/s/  J. Michael Ranson
**J. Michael Ranson, WVSB #3017**
RANSON LAW OFFICES, PLLC
1562 Kanawha Blvd., East
Post Office Box 3589
Charleston, WV  25336
(304) 345-1990

/s/  G. Patrick Jacobs
**G. Patrick Jacobs, WVSB #1867**
JACOBS LAW OFFICE
7020 MacCorkle Avenue, SE
Charleston, WV  25304
(304) 926-6676

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>3,502</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

    /s/ J. Michael Ranson
    J. Michael Ranson

Dated: July 29, 2013

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on July 29, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Gretchen M. Callas
Alvin L. Emch
JACKSON KELLY, PLLC
1600 Laidley Tower
500 Lee Street, East
P. O. Box 553
Charleston, WV  25322
(304) 340-1000

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219