# RECORD NO. 13-1727

## In The
# United States Court Of Appeals
## For The Fourth Circuit

**JEFFREY C. SKEENS, as Administrator of the Estate of Grover Skeens;
CAROLYN D. DAVIS, as Administratrix of the Estate of Charles T. Davis;
OWEN T. DAVIS, as Administrator of the Estate of Cory Davis,**

*Plaintiffs - Appellants,*

and

**GROVER SKEENS; CHARLES T. DAVIS; CORY DAVIS,**

*Plaintiffs,*

v.

**ALPHA NATURAL RESOURCES, INCORPORATED; ALPHA
APPALACHIA HOLDINGS, INCORPORATED,**
**f/k/a Massey Energy Company,**

*Defendants - Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

_____

## REPLY BRIEF
_____

J. Michael Ranson
RANSON LAW OFFICES
1562 Kanawha Boulevard, East
P. O. Box 3589
Charleston, WV 25336
(304) 345-1990

G. Patrick Jacobs
JACOBS LAW OFFICE
7020 MacCorkle Avenue, SE
Charleston, WV 25304
(304) 926-6676

*Counsel for Appellants*

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# **TABLE OF CONTENTS**

**PAGE:**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF FACTS ........................................................................1

    a.    ESTATE BENEFICIARIES .................................................3

    b.    WRONGFUL DEATH BENEFICIARIES ..........................................4

    c.    CRIME VICTIMS AS DEFINED BY THE CVRA
        AND FEDERAL STATUTE ...............................................5

    d.    THE NPA AND HOW IT AFFECTS THE ESTATE
        BENEFICIARIES OF THE FALLEN 11 ..........................................6

SUMMARY OF THE ARGUMENT ...................................................10

ARGUMENT ........................................................................10

REQUEST FOR RELIEF ........................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

Does v. United States,
   817 F. Supp. 2d 1447 (S.D. Fla., 2011).......................................................10

Murphy v. Eastern America Energy Corp.,
   680 S.E.2d 110, 224 W. Va. 95 (W. Va., 2009)...............................................4

United States v. Turner,
   367 F. Supp. 2d 319 (E.D.N.Y., 2005)....................................................12, 13

**STATUTES:**

18 U.S.C. § 3663 ...............................................................................................3

18 U.S.C. § 3663(a)(1)(A) ...............................................................................5

18 U.S.C. § 3771 .........................................................................1, 5, 10, 11

18 U.S.C. § 3771(a)(6) ...................................................................................11

18 U.S.C. § 3771(a)(8) ...................................................................................13

18 U.S.C. § 3771(b) .......................................................................................12

18 U.S.C. § 3771(b)(2)(B)(i) ..........................................................................13

18 U.S.C. § 3771(d) .......................................................................................12

18 U.S.C. § 3771(d)(3) ...................................................................................13

18 U.S.C. § 3771(d)(6) ...................................................................................15

West Virginia Code § 42-1 ............................................................................3, 4, 9

West Virginia Code § 42-1-3a ...........................................................................3

West Virginia Code § 55-7-6............................................................................4, 9

## STATEMENT OF FACTS

This is an appeal from the Southern District of West Virginia's dismissal of an Amended Complaint filed pursuant to the Criminal Victims' Rights Act (CVRA) 18 U.S.C. § 3771. Appellants represent 3 of 29 families of Fallen Miners who died at Upper Big Branch on April 5, 2010 when a Mine owned by Massey Energy Company (Massey) exploded. On June 1, 2011 Alpha Natural Resources, Inc. (Alpha) purchased the assets of Massey and its affiliated companies[1].

The U.S. Attorney's office began a criminal investigation of Massey's agents for acts that may have caused the death of these 29 miners and serious injury to over 20 other miners who were working in the mine when it exploded. The first indictments were returned in Superseding Indictments in *United States v. Hughie Elbert Stover,* 5:11 Cr. 00038 (S.D. W. Va.), and in *United States v. Thomas Harrah*, 5:11 Cr. 00082 (S.D. W. Va.).

It is clear Alpha was concerned that Massey and its affiliates would be charged with criminal acts and potential restitution.  On December 6, 2011, Alpha entered into a Non-Prosecution Agreement (NPA) (J.A. Vol. II at 151) in which it

---

[1] It is not disputed that Alpha's purchase permitted it to assume indirect ownership of all Massey subsidiaries and that the assets or liabilities of those entities transferred were not transferred. Also, it is not disputed that Alpha is not a successor to Massey.

1

voluntarily agreed to pay $1,500,000.00 in restitution to each of the families of the Fallen Miners and to 2 of the injured miners[2].

In the negotiated agreement, Alpha, mismatched language and terms which provided an improper excuse to avoid paying restitution to 11 of the Fallen Miners as will be set forth herein. In fact, Alpha continues to use improper classifications and mismatched language in the response brief filed with this Court.

In order to adequately review the NPA, it is necessary to understand the parties involved and to distinguish two groups of individuals. The two groups that must be distinguished are Estate Beneficiaries and Wrongful Death Beneficiaries. By definition these two legal groups or entities **are not the same**, are not and cannot be treated the same under West Virginia law. Importantly, a payment of restitution to Estate Beneficiaries is not a payment of restitution to Wrongful Death Beneficiaries and a restitution payment to Wrongful Death Beneficiaries is not a restitution payment to Estate Beneficiaries.

Additionally, under the federal law at issue herein, Wrongful Death Beneficiaries are not, by definition, crime victims. To the contrary, the CVRA

---

[2] It is believed that the twenty or more miners who were seriously injured were not included in the NPA because Alpha did not report these injuries to the Government. 16 of these miners (all of whom suffered brain injuries and Post Traumatic Stress Syndrome) brought a separate action in the Southern District of West Virginia seeking inclusion in the NPA. However, before the matter could be heard by the Court, Alpha settled those claims for substantial sums of money. A condition of the settlement was dismissal of their claim to be a part of the NPA.

2

recognizes Estate Beneficiaries as the Crime Victims and mandates that this group of individuals be represented by the Estate Administrator. As it relates to Restitution, 18 U.S.C. § 3663 recognizes that when restitution is paid it must be paid to the Administrator of the Estate or Estate Beneficiaries. Estate Beneficiaries and Wrongful Death Beneficiaries cannot be used interchangeably.

### a. ESTATE BENEFICIARIES

When a person dies in West Virginia, an Administrator is appointed to be in charge and control of the estate of the deceased individual. The Administrator acts on behalf of the Estate Beneficiaries. In general and absent a Will to the contrary, the Estate Beneficiaries are the family of the deceased. When a person dies without a Will (*this applies to all of the Appellants named herein*) **West Virginia Code § 42-1** defines the "beneficiaries". In most cases the beneficiaries are household family members, not just a blood relative[3]. These family members are represented by the legally appointed Administrator who acts on their behalf. All of the Appellants herein are Estate Beneficiaries (spouses, children or parents). It is believed that the remaining fallen 8 have the same class of Estate Beneficiaries. When money is paid to the Estate Administrator for the benefit of the Estate, it is divided among the Estate Beneficiaries under the statutory formulas set forth in

---

[3] If a man dies leaving wife/children they are by definition the estate beneficiaries. If the man dies without wife or child then the estate beneficiary is his grandchildren and if the man dies with no wife, nor child, nor grandchild then the estate beneficiaries are the man's parents. West Virginia Code § 42-1-3a.

**West Virginia Code § 42-1**. Examples would be payments for property damage of the decedent, donations from various charitable groups who lend support to the families devastated by loss or **criminal restitution**.

### b. WRONGFUL DEATH BENEFICIARIES

Under the West Virginia Wrongful Death Statute, in order to bring order to the litigation, the Administrators of the Estate may institute or resolve wrongful death claims on behalf of a separate class of individuals defined in West Virginia as Wrongful Death Beneficiaries **West Virginia Code § 55-7-6**, **Murphy v. Eastern American Energy Corp**., 680 S.E.2d 110, 224 W. Va. 95 (W. Va., 2009). Any money received in a wrongful death action does not pass through the estate but instead goes to the Wrongful Death Beneficiaries after the distribution is approved by the Court where the cause of action is pending.  Distribution of the proceeds of the wrongful death recovery is achieved through agreement between the Wrongful Death Beneficiaries or by order of the Court.  **West Virginia Code § 55-7-6** Wrongful Death Beneficiaries **do not have** to be a family member or a blood relative. In fact, any person who shows financial dependence upon the decedent can make a claim, i.e. such as a live-in girlfriend.

Clearly, wrongful death beneficiaries and estate beneficiaries are not the same. If a person dies and is survived by only one grandchild that grandchild is the *estate beneficiary*. However, that same grandchild is not identified nor recognized

4

as someone who can take under the *West Virginia Wrongful Death Statute*. On the other hand, an adult brother and sister without any financial dependence can take in a wrongful death case to the exclusion of the grandchild who is the one and only estate beneficiary. Notably, in the some cases involving Upper Big Branch blast victims, girlfriends or significant others were recognized as wrongful death beneficiaries and were awarded substantial sums of wrongful death proceeds – to the exclusion of persons that were by definition estate beneficiaries and family members and albeit with Court approval.

### c. CRIME VICTIMS AS DEFINED BY THE CVRA AND FEDERAL STATUTE

The CVRA defines Crime Victims as Estate Beneficiaries. **18 U.S.C. § 3771**

(e) Definitions.—For the purposes of this chapter, the term "crime victim" means a person directly and proximately harmed as a result of the commission of a Federal offense … In the case of a crime victim who is deceased the … representatives of the **crime victim's estate** … may assume the crime victim's rights under this chapter … (**emphasis added**).

Furthermore, **18 U.S.C. § 3663**(a)(1)(A) states, the Court, when sentencing a defendant … may order … that the defendant make restitution to any victim of such offense, **or if the victim is deceased**, to the **victim's estate**. If the actual victim is deceased the "victim" becomes the victim's estate. Nowhere under federal law is a crime victim defined as a wrongful death distributee. As a matter of law any reference to crime victims is reference to Estate Beneficiaries and under

5

no circumstance can these two legally separate and distinct groups be interchanged.

### d. THE NPA AND HOW IT AFFECTS THE ESTATE BENEFICIARIES OF THE FALLEN 11

The opening provision of NPA states as follows; (J.A. Vol. II at 151)

> This Agreement arises from the ongoing **criminal investigation** conducted by the Office of the **explosion** at Performance Coal Company's **Upper Big Branch Mine** ("UBB") on April 5, 2010 and the conduct of employees of Performance Coal Company and its parent, Massey, and its affiliates regarding violations of the Mine Act, misleading statements regarding health and safety issues, conduct that impeded the work of the United States Department of Labor ("DOL"), including the Mine Safety and Health Administration ("MSHA"), and related issues.

This opening provision of the NPA, which Alpha agreed to, states that the U.S. Attorney's office was involved in an "ongoing" "criminal investigation" arising out of the "explosion" at "Upper Big Branch". The NPA goes on to state that the Government agrees not to criminally prosecute Massey, any predecessor or successor of Massey for any criminal acts committed by its agents.

> 11. In consideration for Alpha's and Massey's entering into this Agreement and their commitment to perform the duties and obligations set forth herein, the Government agrees not to **criminally prosecute** or bring any civil action against Massey, any predecessor or successor of Massey, its current parent, or any of its current or previous direct or indirect affiliates, related to: (a) any conduct attributable to Massey or its affiliates set forth in the Superseding Indictment filed in *United States v. Hughie Elbert Stover*, 5:11 Cr. 00038 (S.D. W. Va.), and in *United States v. Thomas Harrah*, 5:11 Cr. 00082 (S.D. W. Va.);

6

By signing the NPA, the Appellees recognized that criminal investigations and indictments were underway and that the Fallen 29 miners were victims of criminal conduct. One of the major elements of the NPA was the restitution to be paid to victims.  In the first sentence of Paragraph 8 it states:

> As **restitution for the victims** injured in the explosion Alpha agrees to pay, or to cause Massey or its affiliates to pay, at **least $1,500,000.00 to each of the families of the fallen miners.**  (J.A. Vol. II at 151)

In using the word "victims" the <u>only class of persons</u> that this can reference is the *estate beneficiaries* of the 29 Fallen Miners.

There is no dispute that prior to the NPA being signed, that 11 of the Fallen Miners Wrongful Death Beneficiaries entered into Wrongful Death Settlements which were first approved by the Circuit Court of Boone County, and then distributed by the Court to said Wrongful Death Beneficiaries under the West Virginia Wrongful Death Statute.[4] Finally, it is also undisputed that prior to the execution of the NPA none of the Estate Beneficiaries settled with Alpha or Massey regarding any claims of the Estates and neither Massey nor Alpha had offered to pay any money to the Estate Beneficiaries.

Since the two classes of beneficiaries are separate and distinct legal entities the Appellees could not possibly use monies paid to Wrongful Death Beneficiaries

---

[4] Those settlements were with Massey. Alpha was not a party to those settlements. Furthermore, in those settlements the Administrators acted on behalf of the Wrongful Death Beneficiaries not the Estate Beneficiaries.

to satisfy a legal obligation to pay restitution to Estate Beneficiaries. So while Massey did pay $3,000,000.00 in wrongful death benefits to the class of Wrongful Death Beneficiaries, neither Massey nor Alpha has ever paid $1,500,000.00 to Estate Beneficiaries for restitution. This failure to honor its agreement to pay restitution to the estate beneficiaries of those miner's killed in the UBB explosion is very troubling and the basis for the Appellants' underlying cause of action.

For further support for the Appellants' contention that a crime victim is an Estate Beneficiary, this Court need only look to how the remaining Fallen 18 were treated as it relates to the payment of restitution. Since the wrongful death beneficiaries of the Fallen 18 had not yet settled their claims when the NPA was executed, Alpha was permitted to make two separate payments to the Estate Beneficiaries of the Fallen 18.

> (b) (i) **$500,000.00 to be paid within 15 days of the execution of this Agreement**, and (ii) **$1,000,000.00 which will be payable at the time of the resolution of pending civil claims** through settlement, judgment, or otherwise, and as part of such civil resolution to the extent the civil resolution results in a monetary recovery[5].

Within 15 days of execution the NPA, the Appellees paid or offered to pay $500,000.00 to the Estate Beneficiaries of the Fallen 18. This money was paid to

---

[5] As it relates to the Fallen 18, their estates were to be paid and were paid restitution. The Wrongful Death Beneficiaries continued pursuing their Wrongful Death Claims after the restitution payment was paid to the estate beneficiaries.

those who received it as set forth in **West Virginia Code § 42-1 <u>and not as set</u>**
**<u>forth</u> in West Virginia Code § 55-7-6.**

Payment of the $500,000.00 was never made or offered to any of the
Wrongful Death Beneficiaries of the fallen 18 prior to the distribution of said
payments. If the $500,000.00 was meant to be paid as Wrongful Death money then
by West Virginia statute § 55-7-6, the United States Government and Alpha would,
at a minimum, be required to do the following:

1. Obtain a wrongful death distribution date with the Court;
2. Have guardians appointed for any minors that may be wrongful death distributees;
3. Notify all of the wrongful death distributees of the 18 fallen miners of the wrongful death distribution date so they could file appropriate claim;
4. File a petition with the Court for all 18 fallen miner families seeking to have the payment approved;
5. Obtain an Order signed by the Circuit Court approving the acceptance of the $500,000.00 and designating the distribution;
6. Then, on the day of the distribution hearing write multiple checks to the multiple wrongful death beneficiaries based upon the decision by the Court as to how the money was to be distributed.

This would all be required because Wrongful Death monies do not pass
through the estate of the Fallen Miners.[6]   In reality, the Appellees are engaging in
*Tomfoolery* and are attempting to use monies paid to Wrongful Death Beneficiaries

---

[6] Because counsel for the Appellants also represents Wrongful Death Beneficiaries
of the Fallen 18 he can confidently state that none of the above was done.  Instead,
Appellees made payments that were immediately distributed to the Estate
Beneficiaries – all without Court approval or compliance with many other
requisites set forth in **West Virginia Code 55-7-6**.

of the Fallen 11 to absolve themselves of required restitution payments they are obliged to pay to victims or "Estate Beneficiaries" of the Fallen 11.

## SUMMARY OF THE ARGUMENT

It is the Appellant's contention that under the Crime Victims' Rights Act (CVRA) the District Court can review the terms of a Non-Prosecution agreement (NPA) to determine if the crime victim's rights are protected by that Agreement.

## ARGUMENT

In the matter below, the Appellants sought review of the (NPA) under all of the protections afforded by 18 U.S.C. § 3771 without exception and without waiving any of those protections. It is unclear why the district court judge dismissed the Appellant's federal question since she opined in a Footnote of the opinion the Appellants did have the right to have a pre-indictment review of the NPA. Specifically, Footnote 7 states as follows:

> the right to be "reasonably protected from the accused" and the right to be "treated with fairness and with respect" may apply pre-indictment. *Does v. United States,* 817 F. Supp. 2d 1447 (S.D. Fla., 2011) ("The government's obligation to give victims notice of their rights under subsection (a) can apply before any charging instrument is filed, depending on which subsection (a) right is at issue and the circumstances involved.") **Skeens v. Alpha Natural Res.**

If all of the victims are the same, the District Court, under the CVRA has the authority to review the NPA to determine if the Fallen 11 were "reasonably

10

protected from the accused" and were "treated with fairness and with respect". This is the purpose of the protection provided to crime victims under the CVRA.

The Appellants did not ask the District Court to order "new" restitution. The Appellees already agreed to pay voluntary restitution. Once the restitution is agreed upon, the District Court can clearly order that it be made under the CVRA.

Specifically, **18 U.S.C. § 3771(a)(6)** states that a Crime Rights Victim has **the right to full and timely restitution "<u>as provided in law</u>" (emphasis added).** Surely, once a potential defendant agrees to pay restitution, the District Court can review the NPA to ensure that it was fully and timely paid and that all victims are treated with fairness and respect.  The logical interpretation of **18 U.S.C. § 3771** is that  the District Court has the authority, under the CVRA, to ensure that the restitution once agreed is fully and timely paid as "provided in law". Undoubtedly, the district court has jurisdiction and the authority to enforce agreements between the Government and parties with whom the Government contracts.

Furthermore, the legal argument advanced by the Appellees does not remotely apply to the facts of this case.  While the Appellants agree that the District Court cannot order mandatory restitution under the ***Mandatory Victims Restitution Act § 3663A*** or pursuant to the ***Victim and Witness Protection Act*** against a person who may potentially be charged with a crime or who has not been

11

charged with a crime, this is not the relief that the Appellants seek nor allege in the Amended Complaint as it relates to the NPA. Thus, the Appellees' arguments in this regard do not apply and should fall on deaf ears.

Simply put, the Appellants have not asked the District Court to award restitution against the Appellees. It is undisputed that the Appellees have already agreed to pay restitution. A demand by the Appellants would be duplicitous and redundant. However, because the Appellees voluntarily agreed to pay $1,500,000.00 in restitution to the Estate Beneficiaries of the Fallen 11 and because the Appellees have readily admitted its failure to do so, the Appellants merely seek the Court's assistance in the recovery of that to which they are clearly and unequivocally entitled.

Therefore, the simple question to be addressed is "once a person who is part of a criminal investigation voluntarily agrees to pay restitution and memorializes that agreement in a written Non-Prosecution Agreement can the District Court enforce the agreement under the CVRA?" The answer is a resounding **"YES".** In **U.S. v. Turner**, 367 F. Supp. 2d 319 (E.D.N.Y., 2005), the Court stated the CVRA gives crime victims **direct standing** to vindicate their procedural and substantive rights in criminal cases independently of prosecutors, *see* **18 U.S.C. § 3771(d),** and also imposes on the judiciary an affirmative obligation to "ensure" that those rights are "afforded." ***Id.*** § 3771(b).

Under 18 U.S.C. § 3771(b)(2)(B)(i)  *Enforcement* crime victims have standing to enforce their own rights:

> In general.—These rights may be enforced by the crime victim or the crime victim's lawful representative in the manner described in paragraphs (1) and (3) of subsection (d).

**Subsection (d)(3) states**

> The rights described in subsection (a) <u>shall be asserted</u> in the district court in which a defendant is being prosecuted for the crime or, <u>if no prosecution is underway</u>, in the district court in the district in which the crime occurred.

The Appellants have properly asserted their rights to receive restitution in a clear, concise and timely manner. There is no doubt that the District Court has the authority to enforce an NPA as it relates to victims' rights. Otherwise, the law regarding NPAs and the CVRA has no meaning. A review by the district court does not prevent the Appellees raising defenses in the District Court. For example, if the Appellees can show that they met their obligations to the victims under the NPA then the District Court could make such a finding. However, if the Appellees have not met their obligation then the Court, under the CVRA, has the right to order the Appellees to make the voluntary restitution payment if it expects the protection afforded by the NPA.

Additionally, in **<u>Turner,</u>** the Court held in reviewing the provision "*The right to be treated with fairness and with respect for the victim's dignity and privacy*" 18 U.S.C. § 3771(a)(8)

13

that the Senate sponsors of the law were clear in their articulation of the overall import of the provision: to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity. "It is not the intent of this bill that its significance be whittled down or marginalized by the courts or the executive branch.

The Appellees' position that the District Court cannot enforce an NPA is illogical and completely contrary to well established law and is in direct conflict with the Senate sponsors of the law regarding the victim's rights. The Appellees' narrow interpretation would gut and eliminate the CVRA. The Appellants, on the other hand, ask this Court to give the CRVA the logical and intended interpretation which grants a District Court the power to enforce an NPA, including agreements to pay voluntary restitution. The fair and logical interpretation will protect the rights of these criminal victims and ensure that they will be treated with fairness and with respect.

Finally, the Appellants understand and appreciate the limits of their rights under the CVRA. The CVRA does not give the Appellants the right to direct prosecutions and they are not seeking to do so in these proceedings. Clearly the Government made the decision to permit Alpha, Massey and its affiliates to enter into an NPA that absolved all criminal liability. The Government has the right to enter into such an agreement so long as the victims are treated with fairness and with respect. The Appellants also understand that the Government has the right to

14

negotiate an appropriate amount of voluntary restitution, if any, to be paid to the victims.

In this case, the Government, in exchange for the benefits of the NPA, requested the Appellees pay $1,500,000.00 to all of the families (estate beneficiaries) of the Fallen 29 and the Appellees agreed. Now, however, Appellees refuse to make the payment to the victims "Estate Beneficiaries" of the Fallen 11. In the press release issued by the Government it unequivocally states that each of the families of the fallen miners were to receive $1,500,000.00 in restitution (not wrongful death monies). The press release says as follows: (J.A. Vol. II at 150)

> "In addition, the company **will make** restitution of a total of $46,500,000 ($1,500,000.00 million each) to the families of the 29 fallen miners who were lost at UBB"

The CVRA does not require the crime victims bring an action against the Government or any other party in order to receive payment of restitution and actions against the Government are limited 18 § 3771(d)(6).

The Government persuaded the Appellees to pay restitution to each of the families of the Fallen 29. However because the Appellees misrepresent that they have paid restitution to the estate beneficiaries of the Fallen 11, it is now left up to the victims to seek to enforce of their rights in the United States District Court for the Southern District of West Virginia.

15

## **REQUEST FOR RELIEF**

Based on the foregoing, the Appellants respectfully request this Court reverse the judgment of the United States District Court for the Southern District of West Virginia and remand this action with directions that it be reinstated on the docket and for such and other relief this Court may deem just and proper.

Respectfully submitted,

/s/  J. Michael Ranson

**J. Michael Ranson, WVSB #3017**
Ranson Law Offices, PLLC
1562 Kanawha Blvd., East
Post Office Box 3589
Charleston, WV  25336
(304) 345-1990

/s/  G. Patrick Jacobs

**G. Patrick Jacobs, WVSB #1867**
Jacobs Law Office
7020 MacCorkle Avenue, SE
Charleston, WV  25304
(304) 926-6676

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains <u>3,980</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

/s/ J. Michael Ranson
J. Michael Ranson

Dated:  September 19, 2013

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on September 19, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Gretchen M. Callas
Alvin L. Emch
JACKSON KELLY, PLLC
1600 Laidley Tower
500 Lee Street, East
P. O. Box 553
Charleston, WV  25322
(304) 340-1000

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219